UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL NO. 12-155(RJL) |
| | : | |
| v. | : | |
| | : | |
| JAMES WENDELL BROWN | : | |
| Defendant. | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum to assist the Court in issuing an appropriate sentence in this case. For the reasons set forth herein, the government recommends a sentence of 151 months of incarceration, based on the defendant's offense level 34 and the charged conduct as set forth below, with a term of supervised release of not less than ten years, with the conditions requested in the Presentence Investigation Report (PSR).

### PROCEDURAL BACKGROUND

1. On January 30, 2013, the defendant James Wendell Brown pled guilty pursuant to a plea agreement to one count of distribution of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(2).

2. In the Presentence Investigation Report, dated March 22, 2013, and consistent with the parties' plea agreement in this case, the defendant's base offense level was 22. That base offense level was increased by 2 levels because the material involved a prepubescent minor or minor below the age of 12; by an additional 2 levels because the offense involved distribution; by an additional 4 levels because the material portrayed sadistic or masochistic conduct or other

depictions of violence; by an additional 5 levels because the offense involved a pattern of activity involving the sexual abuse of a minor(s); and by an additional 2 levels because the offense involved the use of a computer; – for a total Adjusted Offense Level of 37.  See PSR ¶¶ 27-40.

3. With a three-level decrease for acceptance of responsibility, the defendant's total offense level is 34.  The defendant's total criminal history score is zero.

## FACTUAL BACKGROUND

4. Leading up to March 5, 2012, Metropolitan Police Department Detective Timothy Palchak had been acting in an undercover capacity as part of a multi-jurisdictional FBI/MPD Child Exploitation Task Force, operating out of a satellite office in Washington, D.C.  In that capacity, Detective Palchak ("UC") created an online profile on a predicated social network site which is a site frequented by individuals that have a sexual interest in children.

5. On March 5, 2012, at approximately 1:05 p.m., an individual using the screen name "justluckyjwb" initiated a private instant message chat with the UC.  During the early portion of the instant message chat, "justluckyjwb" – who was later identified as the defendant, James Wendell Brown (hereinafter "BROWN") – identified himself as a 50-year-old male from Warrenton, Virginia and asked the UC, "[W]hat age range do you like[?]"  When the UC responded that his preference was for under 12, BROWN responded, "3-8 best . . . love them flat and smooth."  When the UC inquired if BROWN had "any exp[erience]," BROWN responded, "I used to enjoy my grand daughter but she was taken from me a year ago . . . I only got her to do oral on me . . . her grandma was always to close to do anymore."  BROWN added that he "started m[]ine at 2 ½ training her . . . at 3 ½ she could deep throat me . . .she had no gag reflex . . . I used her mouth until 5 when she was taken from me."

2

6.      During the course of the March 5, 2012, online conversation, the UC indicated that he was "active with [his] 12 year-old," to which BROWN replied, "thats very sweet" and asked if the child was a boy or girl.  BROWN stated, "I'm looking for a new playmate . . .is she petite or a big girl."

7.      As the online exchange continued, the UC sent BROWN a morphed, clothed picture of the purported child, to which BROWN responded, "[V]ery pretty girl . . . does she like to receive oral or give[?]"  When the UC stated that it had been a fantasy to see the purported child perform oral sex on a "strange cock," BROWN responded, "[L]ike I said I'm only an hour away."  The UC and BROWN thereafter discussed the possibility of meeting on Friday, March 9, 2012, for purposes of engaging in sexual acts with the purported 12-year-old girl.  During the online chat, BROWN noted that it had been approximately one year since he had engaged in sexual acts with his grand-daughter.  BROWN also noted that he missed it "more than you can dream."

8.      As the online exchange continued, BROWN sent the UC three images of child pornography.  The first image sent by BROWN depicted a close-up view of a female vagina that appears to be of a child under the age of 18.  When the UC asked if the image depicted "how your grand-daughter's looked," BROWN replied, "[Y]es but that is not her."  The second image sent by BROWN depicted two prepubescent female children masturbating an adult male penis.  The third image sent by BROWN depicted two prepubescent female children, both nude with an adult male, with one performing oral sex on the adult male's penis and the other kissing the adult male on the mouth.  After sending the third image, BROWN stated, "I love that little mouth tight around that cock."

9.    In discussing his grand-daughter again, BROWN noted that "she would only suck me . . . I was never alone long enuff to do anything more." When asked if he ever ejaculated, BROWN responded, "[N]ot in her . . . her grandma was always in the next room." He also explained, "[M]y grand daughter could deep throat me . . . she had no gag reflex . . . every time I could I would pull it out and she would just run up and take it in her little mouth."

10.   Towards the end of the March 5, 2012, online chat, BROWN inquired, "Are you looking to get your daughter after school Friday for the weekend[?]" When the UC responded affirmatively and asked, "[I]s that good for you," BROWN replied, "Yes." BROWN also noted, "I look forward to meeting you and your little girl . . . I hope she is willing to partake i[n] a little fun and games." BROWN added, "Ok I look forward to hearing from you later this week to let me know if you want to meet . . . I will look for you and your daughter."

11.   During the course of this investigation, members of the FBI Child Exploitation Task Force were able to confirm through the Fauquier County Sheriff's Office that BROWN was under investigation for sexual abuse charges in Fauquier County, Virginia involving his granddaughters – K.S., now age 7 and L.S., now age 4. In a statement to Fauquier County authorities, K.S. disclosed that BROWN made her sit on his lap on multiple occasions while BROWN moved his body back and forth and side to side effectively rubbing his clothed penis on her buttocks on many occasions and rubbed his hands on her unclothed buttocks on one occasion.

12.   In the course of its investigation, Fauquier County authorities also learned that, on at least one occasion, a witness walked in on L.S., age 3 at the time, straddling BROWN. Specifically, an adult eyewitness stated that she observed BROWN laying in bed with L.S. sitting on his lap straddling him. They were face-to-face and L.S., wearing a dress, was leaning on

BROWN'S stomach.  BROWN'S hands were on the child's buttocks.

13. In the course of its investigation of this case, the government also learned of allegations of sexual abuse involving BROWN'S biological daughter J.W. – age 6 at the time of the allegations (now age 14). The child alleged that this would happen when she was approximately 3-years-old.

14. BROWN concedes that the government could prove the abuse set forth above by clear and convincing evidence.

## GOVERNMENT'S SENTENCING RECOMMENDATION

### A. Application of the Federal Guidelines post-*Booker*

15. In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). Booker, 125 S. Ct. at 756.

16. As the Supreme Court has stated, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See United States v. Gall, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). After giving both parties an opportunity to argue for an appropriate sentence, the district court should then consider all of the applicable factors set forth in

Title 18, United States Code, Section 3553(a).  Id.  These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

17. The Guidelines themselves seek to implement – in a fair and uniform way – these factors.  A sentencing court must make an "individualized assessment based on the facts presented."  Id. at 49.

### B. Basis for Government's Recommendation

18. The government submits that a sentence of 151 months is appropriate, warranted, and in the best interests of justice in this case.  A sentence of 151 months takes into account the fact that the defendant distributed only three images of child pornography.  However, the five point enhancement also takes into account that the defendant has engaged in a pattern of activity when it comes to the sexual exploitation of children.

### *Nature and circumstances of the offenses*

19.     The defendant's actions in this case are deeply disturbing.  The defendant engaged in a lengthy online chat relating to his desire to engage in sexual acts with children with an undercover detective, whom the defendant believed had sexual access to a fictional 12-year-old girl.  The defendant, who wrote that he preferred under 12 -- "3-8 is best . . . love them flat and smooth," – told the UC that he, " . . . used to enjoy his granddaughter, but she was taken away from me a year ago . . . I only got her to do oral on me . . . her grandma was always too close to do anymore."  The defendant continued, "I started mine at 2 ½ training her . . . at 3 ½ she could deep throat me . . . she had no gag reflex . . . I used her mouth until 5 when she was taken from me."  The defendant has acknowledged that the government could prove the sexual abuse of his granddaughters by clear and convincing evidence.

20.     The chat itself was very graphic.  The defendant was not shy about expressing his interest in having sex with either the purported child to whom the undercover claimed to have access or with his own granddaughters.  Most disturbingly we know that these desires were, in fact, carried out.

21.     During the course of the chat, the defendant sent the UC three images of child pornography.  Those images included: (1) a close-up view of a female vagina that appears to be of a child under the age of 18; (2) two prepubescent female children masturbating an adult male penis; and (3) two prepubescent female children, both nude with an adult male, with one performing oral sex on the adult male's penis and the other

kissing the adult male on the mouth. With respect to the child pornography itself, the impact of this conduct cannot be underestimated in terms of its harm to the community at-large, as well as the dangerousness that it underscores for this defendant. The defendant's distribution of these images helped maintain an underground market for some of the most offensive and pernicious visual content that exists in our society.

      22.    The harm posed by the defendant's actions is clear. As the Supreme Court recognized in the seminal case of <u>New York v. Ferber</u>:

> The use of children as subjects of pornographic materials is very harmful to both the children and the society as a whole. It has been found that sexually exploited children are unable to develop healthy relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults.
>
> Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place.

458 U.S. 747, 758-60 nn. 9 & 10. The Court continued, "[a] child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography. . . . It is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotion repercussions." <u>Id.</u> at 759 n.10. As the Fifth Circuit similarly concluded, the crimes of a "'passive' child pornography recipient" are not "somehow attenuated as compared to a person who actually produces or distributes child pornography . . . victimization of a child depicted in pornographic material flows just as directly from the crime of knowingly receiving child

pornography as it does from the arguably more culpable offenses of producing or distributing child pornography." United States v. Norris, 159 F.3d 926, 930 (5th Cir. 1998).

23. After all, "the 'victimization' of the children involved does not end when the pornographer's camera is put away. The consumer, or end recipient, of pornographic materials may be considered to be causing the children depicted in those materials to suffer as a result of his actions" Id. at 929. While the children in the images in this case have not been identified, the defendant's acts – although distinct from the actual sexual abuse of the victims itself – remains a continuing victimization of the children portrayed in those images.

### *History and characteristics of the defendant*

24. The defendant is a 51-year old male without significant contact with the criminal justice system.

### *Punishment, deterrence, protection, and correction*

25. As described in detail above, the offenses at issue in this case are extremely serious and the sentence imposed should reflect that fact. The government believes that the guideline range recommended would provide a just sentence based on the defendant's conduct in this case. A sentence below that range, particularly one of any significant amount, may send a false signal to this defendant, other defendants, and the community at large that the instant offenses do not entail any real danger. To the contrary, the defendant's conversations with the undercover detective and his distribution

of child pornography pose an identifiable and significant danger to the community. The defendant's actions in this regard were egregious and justice requires that they be appropriately punished. The recommended period of incarceration would provide that punishment and simultaneously deter future criminal conduct. Additionally, incarceration would protect the community by incapacitating the defendant. Correctional treatment, as well as any necessary medical care, would be available to the defendant through the U.S. Bureau of Prisons.

### *Available sentences*

26. The government submits that incarceration is the most appropriate sentence available for the defendant because it will incapacitate him for a determined period of time. A term of supervised release of not less than ten years, with the conditions recommended in the PSR, would also be appropriate to ensure that the defendant is monitored and the community is protected.

27. To his credit, the defendant noted a willingness to accept responsibility at an early stage of the proceedings ultimately entering his guilty plea pre-indictment. The government is certainly taking this acceptance of responsibility into account in making its recommendation at the low end of the sentencing guideline range.

28. For all of the reasons set forth above, the government recommends a sentence of 151 months. This sentence strikes an appropriate balance between the seriousness of the offense, the danger posed to the community, the need for just punishment, deterrence of criminal conduct, and protection of the community, with the

history and characteristics of the defendant.

## CONCLUSION

Wherefore, the government respectfully submits that a sentence of 151 months of incarceration be imposed, with a period of supervised release of not less than ten years, including the conditions recommended in the Presentence Report.

RONALD C. MACHEN JR.
United States Attorney


BY:   /s/
ARI B. REDBORD
Assistant United States Attorney
D.C. Bar 476998
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7018