UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,: | CRIMINAL NO. 12-155(RJL) |
| v. | |
| JAMES WENDELL BROWN<br>Defendant. | **FILED**<br>JUN 1 9 2013<br>Clerk, U.S. District & Bankruptcy<br>Courts for the District of Columbia |

### STATEMENT OF THE OFFENSE

The parties in this case, the United States of America and the defendant, James Wendell Brown, stipulate and agree that the following facts are true and accurate. These facts do not constitute all of the facts known to the parties concerning the charged offense; they are being submitted to demonstrate that sufficient facts exist that the defendant committed the offense to which he is pleading guilty.

1. Leading up to March 5, 2012, Metropolitan Police Department Detective Timothy Palchak had been acting in an undercover capacity as part of a multi-jurisdictional FBI/MPD Child Exploitation Task Force, operating out of a satellite office in Washington, D.C. In that capacity, Detective Palchak ("UC") created an online profile on a predicated social network site which is a site frequented by individuals that have a sexual interest in children.

2. On March 5, 2012, at approximately 1:05 p.m., an individual using the screen name "justluckyjwb" initiated a private instant message chat with the UC. During the early portion of the instant message chat, "justluckyjwb" – who was later identified as the defendant, James Wendell Brown (hereinafter "BROWN") – identified himself as a 50-year-old male from Warrenton, Virginia and asked the UC, "[W]hat age range do you like[?]" When the UC responded that his preference was for under 12, BROWN responded, "3-8 best . . . love them flat

and smooth." When the UC inquired if BROWN had "any exp[erience]," BROWN responded, "I used to enjoy my grand daughter but she was taken from me a year ago . . . I only got her to do oral on me . . . her grandma was always to close to do anymore." BROWN added that he "started m[]ine at 2 ½ training her . . . at 3 ½ she could deep throat me . . . she had no gag reflex . . . I used her mouth until 5 when she was taken from me."

3.     During the course of the March 5, 2012, online conversation, the UC indicated that he was "active with [his] 12 year-old," to which BROWN replied, "thats very sweet" and asked if the child was a boy or girl. BROWN stated, "I'm looking for a new playmate . . . is she petite or a big girl."

4.     As the online exchange continued, the UC sent BROWN a morphed, clothed picture of the purported child, to which BROWN responded, "[V]ery pretty girl . . . does she like to receive oral or give[?]" When the UC stated that it had been a fantasy to see the purported child perform oral sex on a "strange cock," BROWN responded, "[L]ike I said I'm only an hour away." The UC and BROWN thereafter discussed the possibility of meeting on Friday, March 9, 2012, for purposes of engaging in sexual acts with the purported 12-year-old girl. During the online chat, BROWN noted that it had been approximately one year since he had engaged in sexual acts with his grand-daughter. BROWN also noted that he missed it "more than you can dream."

5.     As the online exchange continued, BROWN sent the UC three images of child pornography. The first image sent by BROWN depicted a close-up view of a female vagina that appears to be of a child under the age of 18. When the UC asked if the image depicted "how your grand-daughter's looked," BROWN replied, "[Y]es but that is not her." The second image

sent by BROWN depicted two prepubescent female children masturbating an adult male penis. The third image sent by BROWN depicted two prepubescent female children, both nude with an adult male, with one performing oral sex on the adult male's penis and the other kissing the adult male on the mouth. After sending the third image, BROWN stated, "I love that little mouth tight around that cock."

6. In discussing his grand-daughter again, BROWN noted that "she would only suck me . . . I was never alone long enuff to do anything more." When asked if he ever ejaculated, BROWN responded, "[N]ot in her . . . her grandma was always in the next room." He also explained, "[M]y grand daughter could deep throat me . . . she had no gag reflex . . . every time I could I would pull it out and she would just run up and take it in her little mouth."

7. Towards the end of the March 5, 2012, online chat, BROWN inquired, "Are you looking to get your daughter after school Friday for the weekend[?]" When the UC responded affirmatively and asked, "[I]s that good for you." BROWN replied, "Yes." BROWN also noted, "I look forward to meeting you and your little girl . . . I hope she is willing to partake i[n] a little fun and games." BROWN added, "Ok I look forward to hearing from you later this week to let me know if you want to meet . . . I will look for you and your daughter."

8. During the course of this investigation, members of the FBI Child Exploitation Task Force were able to confirm through the Fauquier County Sheriff's Office that BROWN was under investigation for sexual abuse charges in Fauquier County, Virginia involving his granddaughters – K.S., now age 7 and L.S., now age 4. In a statement to Fauquier County authorities, K.S. disclosed that BROWN made her sit on his lap on multiple occasions while BROWN moved his body back and forth and side to side effectively rubbing his clothed penis on

her buttocks on many occasions and rubbed his hands on her unclothed buttocks on one occasion.

10. In the course of its investigation, Fauquier County authorities also learned that, on at least one occasion, a witness walked in on L.S., age 3 at the time, straddling BROWN. Specifically, an adult eyewitness stated that she observed BROWN laying in bed with L.S. sitting on his lap straddling him. They were face-to-face and L.S., wearing a dress, was leaning on BROWN'S stomach. BROWN'S hands were on the child's buttocks.

11. In the course of its investigation of this case, the government also learned of allegations of sexual abuse involving BROWN'S biological daughter J.W. -- age 6 at the time of the allegations (now age 14). The child alleged that this would happen when she was approximately 3-years-old.

12. BROWN concedes that the government could prove the abuse set forth above by clear and convincing evidence.

## DEFENDANT'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have discussed it with my attorneys, Lara Quint and Shelli Peterson, Esquires. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 6/19/2013

_____
James Wendell Brown
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense, and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 6/19/2013

_____
Lara Quint, Esq.
Shelli Peterson, Esq.
Attorneys for James Wendell Brown