### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:12-CR-155-RJL** |
| | ) | |
| **JAMES WENDELL BROWN** | ) | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)(i)

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Opposition to the defendant James Wendell Brown's emergency motion to reduce sentence pursuant to the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i) [Dkt. 61].

### BACKGROUND

On June 19, 2013, the defendant pled guilty to one count of distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) [Dkt. 31].  On June 26, 2013, the Court sentenced the defendant to 144 months of imprisonment, followed by 20 years of supervised release [Dkt. 35].  The defendant noted a timely appeal and the United States Court of Appeals for the District of Columbia Circuit ("D.C. Cir.") remanded the case for resentencing.  *United States v. Brown*, 808 F.3d 865, 874 (D.C. Cir. 2015).

On June 8, 2016, upon remand, the Court imposed the same 144-month sentence, followed by 20 years of supervised release.  The defendant again noted an appeal.  The D.C. Circuit affirmed the defendant's sentence.  *United States v. Brown*, 857 F.3d 403 (D.C. Cir. 2017).  The D.C. Circuit explained:

> The facts are grim. In 2012, James Brown was drawn into an online sting operation with a police detective. In a plea agreement, Brown conceded that the government had clear and convincing evidence that he had asked for sex with a prepubescent child, talked about

having sexually abused certain minors every chance he got, expressed a preference for very young children, and abused his daughter and granddaughters when they were as young as three to six years old.

Id. at 404-05.  As the defendant acknowledges in his emergency motion, the Court stated at the resentencing hearing that the defendant was "spared another prosecution—and perhaps many more years of imprisonment—for sexual abuse he certainly committed," the abuse was persistent, the victims were extremely young, and the betrayal of trust was acute.  Defendant's Emergency Motion, at 3.

## ARGUMENT

The defendant now moves this Court to reduce his sentence pursuant to the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i).  The defendant is 58 years old.  He is currently incarcerated at FCI Butner Low.  His projected release date is June 18, 2022.  According to BOP records, he has served nearly 70% of his sentence (as of April 7, 2020, he had served 66.9% of his sentence).  He states that he suffers from severe chronic obstructive pulmonary disease ("COPD") and asthma overlap syndrome, allergic rhinitis, and gastroesophageal reflux disease ("GERD"), and that he is oxygen-dependent and wheelchair-bound.  He adds that "[b]ecause of his age and medical conditions, [he] has a higher risk than others of becoming infected and requiring hospitalization and intensive care" due to the COVID-19 pandemic.  Finally, he alleges that BOP cannot provide adequate medical care for him.

### I.    Legal Principles

18 U.S.C. § 3582(c) provides, in relevant part:

The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon

2

motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction;

. . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).

Section 1B1.13 of the United States Sentencing Commission's Guidelines Manual specifically provides the policy statement relating to Section 3582(c). Section 1B1.13 states that, after considering the factors in 18 U.S.C. § 3553(a), the Court may grant a reduction where:

> (1)(A) Extraordinary and compelling reasons warrant the reduction; or
>
> (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

See Section 1B1.13.

Application Note 1 (to Section 1B1.13) further delineates "Extraordinary and Compelling Reasons, as follows:

> Extraordinary and Compelling Reasons.--Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.--

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is--

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.--

…

(D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

*See* U.S.S.G § 1B1.13, App. Note 1.[1]  Application Note 1 thus provides three specific reasons that are considered "extraordinary and compelling," as well as a catchall provision recognizing as "extraordinary and compelling" any other reason as previously "determined by the Director of the

---

[1]   Application Note 2 provides that, "[f]or purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement."

Bureau of Prisons." *Id*.

In assessing the merits of a defendant's motion for compassionate release under Section 3582(c)(1)(A), the Court's ultimate decision must be "consistent with applicable policy statements issued by the Sentencing Commission." Further, 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples…." Accordingly, the policy statement of the Commission is binding on the Court. *See Dillon v. United States,* 560 U.S. 817, 827 (2010) (where 18 U.S.C. § 3582(c)(2) permits a sentencing reduction based on a retroactive guideline amendment, "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," the Commission's pertinent policy statements are binding on the court).[2]   In determining whether to modify an imposed term of imprisonment based upon compassionate release, the Court may not modify a

---

[2]   Defendant also refers to BOP's Program Statement 5050.50. This program statement was amended effective January 17, 2019, following passage of the First Step Act. It replaces the previous program statement, 5050.49, CN-1. Program Statement 5050.50 contains standards that are both more extensive than and slightly different from those stated in the Sentencing Guidelines Section 1B1.13 policy statement. To the extent that the BOP program statement and the Sentencing Guidelines policy statement conflict, the Sentencing Guidelines policy statement—*i.e.*, the source directly authorized by statute—is binding. An interpretation in the BOP program statement that does not contradict the policy statement, however, is entitled to some weight. *See Reno v. Koray,* 515 U.S. 50, 61 (1995) (BOP program statements, which do not require notice and comment, are entitled to "some deference" where they reflect a "permissible construction of the statute") (internal quotation marks omitted).

The government notes that in *United States v. Young,* No. 2:00-CR-00002-1, 2020 WL 1047815, at *2 (M.D. Tenn. Mar. 4, 2020), the U.S. Attorney's Office for the Middle District of Tennessee took the position that because the Sentencing Commission's policy statement "has not been amended to reflect that, under the First Step Act, a defendant may now move for compassionate release after exhausting administrative remedies," the existing policy statement, while providing "helpful guidance," "is not ultimately conclusive given the statutory change." This position was taken in error and is contrary to Department of Justice policy.

sentence unless its finds, after considering the factors set forth in Section 3553(a), that "extraordinary and compelling reasons warrant such a reduction."  Section 3582(c)(1)(a)(i).

## II.     **Defendant's Emergency Motion for Compassionate Release Should Be Denied.**

As an initial matter, the defendant states that he has exhausted his administrative remedies for seeking compassionate relief from the Bureau of Prisons ("BOP").  According to BOP's records, this is correct.  Moreover, the statute allows the defendant to file this motion with the Court under 18 U.S.C. § 3582(c)(1)(A) because more than 30 days has elapsed since the Warden's receipt of the defendant's request.

### A.     **Defendant's Emergency Motion for Compassionate Release Should Be Summarily Denied Because He Has Not Established Extraordinary and Compelling Reasons Justifying His Early Release.**

The defendant's motion should be denied because he is not eligible for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and the Sentencing Commission's policy statement for compassionate release at U.S.S.G. §1B1.13(1)(A).  Here, the defendant plainly does not meet the criteria.  As noted above, the defendant is 58, not 65, and thus does not qualify based on age.  He is not seeking compassionate release based upon family circumstances.  He asserts that he should be granted compassionate release because he has "chronic" and "debilitating" medical conditions.  Thus, he appears to seek compassionate release based on his allegation that he suffers from a terminal illness pursuant to Application Note 1(A)(i), or that he qualifies for compassionate release under Application Note 1(A)(ii), or that he qualifies under the catchall provision found in Application Note 1(D).

We respectfully disagree that defendant has made the requisite showing under any of these provisions. By letter dated September 5, 2019, BOP denied the defendant's request for

compassionate release pursuant to 18 U.S.C. § 3582(C)(1)(A) based upon Section 3(b) of its policy statement, 5050.50, concluding that the defendant was:

> able to able to attend to the majority of his Activities of Daily Living (ADLs) and Instrumental Activities of Daily Living (IADLs) at his own pace including bathing; dressing; grooming, toileting; transfers; feeding; using the phone, computer and TRULINCS; managing his medications; light housekeeping; preparing meals; and navigating the correctional environment.

Defendant's Ex. F.

The defendant has not established that his medical conditions are "terminal," nor has he shown that his medical conditions "substantially diminish" his ability to care for himself within the confines of his BOP facility <u>and</u> that he is not expected to recover.  Further, the possibility that the defendant might, while incarcerated, contract a disease that is also present in the community at large does not constitute extraordinary and compelling circumstances.  We do not wish to minimize the concern or the risk, but "BOP institutions, as a matter of policy and procedure, have pandemic plans for preparedness in the event of any infectious disease outbreak."[3]  The BOP is prepared to deal with pandemics such as the coronavirus, as it has had in place, since at least October 2012, a plan to deal with other pandemics, including Pandemic Influenza, by taking steps such as increased hygiene, "social distancing," and quarantining.[4]  The dangers associated with COVID-19 are real, and in response to those dangers, BOP has implemented new measures to prevent potential spread and protect the health and safety of its staff and federal inmates.  Specifically in response to the COVID-19 pandemic, BOP has taken aggressive steps to protect inmates' health and to keep COVID-19 outside of its facilities.  "[M]aintaining safety and security

---

[3]  *See* "BOP's COVID-19 Response" https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response.

[4]  *See* BOP's "Pandemic Influenza Plan" (Oct. 2012), https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf.

of [BOP] institutions is [its] highest priority."[5]  The BOP began planning for COVID-19 in January 2020, when it established a task force to develop policies in consultation with the CDC.  BOP has implemented Modified Operations, including suspending social visits, suspending legal visits (but continuing to allow confidential legal calls), limiting inmate movement, maximizing social distancing, enhanced screening of staff, and continued screening of inmates.[6]  Moreover, for inmates who have COVID-19 symptoms, or a temperature greater than 100.4 degrees Fahrenheit, they will immediately be placed in isolation.[7]  In addition, on March 24, 2020, BOP announced that it would quarantine all newly arriving inmates for fourteen days so as to not introduce the infection within the receiving facility.[8]    In sum, BOP has a plan in place to protect inmates, including the defendant.

Finally, the defendant's assertion that BOP cannot provide adequate medical care for him is not accurate.  Defendant's Emergency Motion, at 12-13.  The undersigned has contacted the staff at FCI Butner Low.  In response, Dr. Michael Nwude, the Medical Officer at Federal Correctional Complex, LSCI, provided the following information about the defendant and his care in an email dated April 8, 2020:

Name: Brown, James. DOB: [redacted] Reg #: 32054-016

58 y/o white male with history of oxygen dependent COPD/asthma overlap syndrome, allergic rhinitis, gastroesophageal reflux disease (GERD), mood disorder and diabetes. His medical problems are stable and well managed at BOP by his PCP and specialists as

---

[5]    *See* "Updates to BOP COVID-19 Action Plan: Inmate Movement" (Mar. 19, 2020), https://www.bop.gov/resources/news/20200319_covid19_update.jsp.

[6]    *See* BOP's "COVID-19 Action Plan: Agency-Wide Modified Operations" (Mar. 13, 2020), https://www.bop.gov/resources/news/20200313_covid-19.jsp.

[7]    *See id.*

[8]    *See* "Bureau of Prisons Update on COVID-19" (Mar. 24, 2020), https://www.bop.gov/resources/news/pdfs/20200324_bop_press_release_covid19_update.pdf.

explained hereunder. He has been seen regularly for his chronic Care clinics, and at Sick Calls for his episodic medical problems and at Specialty clinics for in-depth management of his chronic medical problems. He has been maintained on appropriate medications for his medical issues and provided devices/equipment for his medical conditions.

His medications for his oxygen dependent COPD/asthma overlap syndrome include albuterol inhaler/neb, budesonide/formoterol inhaler, tiotropium inhaler, and he is being provided with oxygen concentrator and portable oxygen for the disease control. His disease management is also been facilitated by the respiratory therapist who assists with his pulmonary rehabilitation and pulmonologist who last saw him in consult on 7/24/2019 with recommendations made. He also has a wheelchair for use in view of his getting short of breath because of his COPD/asthma. PFT obtained on him on 01/25/19 was consistent with his asthma/copd diagnosis.

His allergic rhinitis is well controlled with his prescription of fluticasone nasal spray.
His GERD is controlled with his intake of omeprazole and control of his disease status assisted with provision of a bed wedge to him.

At his last mental health visit on 01/06/2020 he reported his mood as being good and he reported no mental health issues. He was also assessed as being in good spirits and mentally stable and continued on his psychotropic medications including buspirone and sertraline.
His prediabetes status has improved considering his hemoglobin A1C of 6.0 dated 12/10/2019 which has improved to 5.8 dated 03/12/2020.

Overall, inmate brown, james 32054-016 is appropriately treated while at BOP.

In addition, BOP provided information on April 9, 2020 to the undersigned that, on March 24, 2020, during a clinical encounter, that the defendant requested that his respiratory therapy be discontinued until the threat of COVID-19 has passed.  If or until the situation changes such that BOP is not able to protect inmates, including those, like defendant, who are more susceptible to COVID-19 due to existing ailments, BOP will continue to provide appropriate care to the defendant.[9]

---

[9]   As of the filing date of the instant pleading, BOP's website shows that there are 14 known COVID-19 cases at FCI Butner Low and no deaths.

**B. The Section 3553(a) Factors and U.S.S.G. 1B1.13(2) Do Not Support Early Release.**

Even if the defendant could demonstrate "extraordinary and compelling reasons" based on his medical conditions, the factors set forth in § 3553(a) do not support the granting him compassionate release.  The § 3553(a) factors are as follows:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care,  or other correctional treatment in the most effective manner.

Defendant's crime in this case was serious and disturbing because it involved the victimization of children. Reducing his sentence would undercut the seriousness of his crime. Further, U.S.S.G. § 1B1.13(2) states that the Court may grant a request for compassionate release only if, among other things, the Court concludes that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

Here, the defendant claims that his "poor physical condition and significant health decline also realistically forecloses a probability of recidivism."  Defendant's Emergency Motion, at 28. The government disagrees.  This case resulted from the defendant's online conversation with a detective from the Metropolitan Police Department during which he expressed an interest in meeting the detective's fictional 12-year-old daughter for the purpose of engaging in sexual acts. He also described sexual acts that he had previously engaged in with his then three-year-old granddaughter and sent the detective three images of child pornography. *Brown*, 808 F.3d at 867-68.  Further investigation revealed that the defendant sexually abused another granddaughter and his own daughter when they were between the ages of 3 and 6.  As this Court noted at the initial

sentencing hearing, the defendant was "a danger to the public, saying: 'There's just no question about that in my mind, zero.'" *Id.* at 869.

      The defendant committed the federal crime of distribution of child pornography by sending images through the Internet that depicted children engaging in sexual acts.  There is no indication that, if released, the defendant's current health conditions would interfere with his use of the Internet.  Thus, he remains a danger to the community and the risk of him re-offending is high, given that he is also a hands-on pedophilic sex offender.  *See United States v. Hahn*, No. CR 08-95 (MJD), 2020 WL 980185, at *3 (D. Minn. Feb. 28, 2020) (denying compassionate release on the grounds of public safety "because the risk of recidivism is high among sex offenders, and in particular pedophiles") (*citing Smith v. Doe*, 538 U.S. 84, 103 (2003) ("The risk of recidivism is 'frightening and high.'") and *United States v. Garthus*, 652 F.3d 715, 720 (7th Cir. 2011) (citation omitted) ("A pedophilic sex offender who has committed both a child-pornography offense and a hands-on sex crime is more likely to commit a future crime, including another hands-on offense, than a defendant who has committed only a child pornography offense.")).

## **CONCLUSION**

WHEREFORE, the government respectfully requests that the Court deny the defendant's

emergency motion for compassionate release.

Respectfully submitted,

TIMOTHY J. SHEA
United States Attorney
D.C. Bar Number 437-437

MARGARET J. CHRISS
Chief, Special Proceedings Division
D.C. Bar Number 452-403

_____/s/_____
PAMELA S. SATTERFIELD
Assistant United States Attorney
Special Proceedings Division
555 4th Street, N.W.
Washington, D.C. 20530
D.C. Bar Number 421-247
Pamela.satterfield@usdoj.gov
202-252-7578

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that, this 9th day of April, 2020, I caused a copy of the foregoing
Opposition to be served via ECF on counsel of record.

_____/s/_____
Pamela S. Satterfield
Assistant United States Attorney