UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| v. ) | Case No. 1:12-CR-155-RJL |
| ) | |
| JAMES WENDELL BROWN ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
FOR RECONSIDERATION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Opposition to the defendant James Wendell Brown's motion for reconsideration of motion for sentence reduction under 18 U.S.C. § 3582 [Dkt. 73] and supplement to that motion [Dkt. 74].

**BACKGROUND**

1.  On June 19, 2013, the defendant pled guilty to one count of distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) [Dkt. 31].  On June 8, 2016, the Court sentenced the defendant to 144 months of imprisonment, followed by 20 years of supervised release [Dkt. 35].  The defendant is currently incarcerated at FCI Butner Low.  His projected release date is June 18, 2022.

2.  On April 5, 2020, the defendant filed a motion for a sentence reduction pursuant to the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i) [Dkt. 61].  On April 9, 2020, the government filed its opposition [Dkt. 65].  The defendant filed a reply, the Court conducted a telephonic hearing, and the parties also filed additional submissions.  On April 25, 2020, the Court issued an Order denying the defendant's motion for compassionate release [Dkt. 69].  The Court ruled that the defendant posed a danger to community because his crime -- the distribution of child pornography -- involved the Internet and, due to the ongoing health crisis, U.S. Probation officers

were unable to conduct home visits and effectively monitor the defendant's Internet use. Therefore, there was no way to mitigate the risk the defendant posed. The Court further found that the defendant's risk of contracting COVID-19 at FCI Butner Low was not high. The defendant noted a timely appeal [Dkt. 70].

3. On May 24, 2020, the defendant filed a motion for reconsideration of motion for sentence reduction under 18 U.S.C. § 3582 [Dkt. 73]; on May 27, 2020, he filed a supplement to that motion [Dkt. 74]. The defendant asks the Court to "rebalance the factors" for compassionate release and grant him immediate release. The defendant relies on new information that he has obtained since the Court issued its Order on April 25, 2020. Specifically, he asserts that FCI Butner Low is "in the midst of a COVID-19 outbreak that puts him at extreme risk of infection" and that "there is little that BOP can do at this point to keep Mr. Brown from being infected." In addition, the defendant asserts that his family members are "prepared to eliminate all internet access from their household."

4. The defendant has failed to show that reconsideration is warranted on both points. First, BOP's most current Action Plan to keep staff and inmates, such as the defendant, safe during the COVID-19 pandemic minimizes his risk. BOP's Action Plan is as follows:

> On March 13, 2020, BOP began to modify its operations, in accordance with its Coronavirus (COVID-19) Action Plan ("Action Plan"), to minimize the risk of COVID-19 transmission into and inside its facilities. Since that time, as events require, BOP has repeatedly revised the Action Plan to address the crisis.
> BOP's operations are presently governed by Phase Seven of the Action Plan. The current modified operations plan requires that all inmates in every BOP institution be secured in their assigned cells/quarters, in order to stop any spread of the disease. Only limited group gathering is afforded, with attention to social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access. Further, BOP has severely limited the movement of inmates and detainees among its facilities. Though there will be exceptions for medical treatment and similar exigencies, this step as well will limit transmissions of the disease. Likewise, all official staff travel has been cancelled, as has most staff training.

>All staff and inmates have been and will continue to be issued face masks and strongly encouraged to wear an appropriate face covering when in public areas when social distancing cannot be achieved.
>
>Every newly admitted inmate is screened for COVID-19 exposure risk factors and symptoms. Asymptomatic inmates with risk of exposure are placed in quarantine for a minimum of 14 days or until cleared by medical staff. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. In addition, in areas with sustained community transmission, all facility staff are screened for symptoms. Staff registering a temperature of 100.4 degrees Fahrenheit or higher are barred from the facility on that basis alone. A staff member with a stuffy or runny nose can be placed on leave by a medical officer.
>
>Contractor access to BOP facilities is restricted to only those performing essential services (e.g. medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization by the Deputy Director of BOP. Any contractor or volunteer who requires access will be screened for symptoms and risk factors.
>
>Social and legal visits were stopped as of March 13, and remain suspended at this time, to limit the number of people entering the facility and interacting with inmates. In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month. Tours of facilities are also suspended. Legal visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screening protocols for prison staff.
>
>Further details and updates of BOP's modified operations are available to the public on the BOP website at a regularly updated resource page: www.bop.gov/coronavirus/index.jsp.
>
>Taken together, all of these measures are designed to mitigate sharply the risks of COVID-19 transmission in a BOP institution. BOP has pledged to continue monitoring the pandemic and to adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

Second, with respect to the defendant's situation in particular, BOP officials at FCI Butner-Low state that the defendant has not reported any symptoms, nor has he been tested for COVID-19. He continues to be seen by his medical providers for his medical conditions. He is not receiving respiratory therapy because that would involve his transfer to a different facility. No inmates are being moved between facilities at the BOP complex in Butner, North Carolina, to reduce the risk of transmission.

5.  We note that BOP personnel have informed undersigned counsel that it is not possible to place defendant in quarantine alone and that he does not need to be placed in isolation,

3

as the Court previously "strongly recommended." – According to BOP personnel, defendant is in the general population, which is an open dormitory style housing and essentially his entire unit is quarantined together.  As of the date of this filing, there are 137 inmates and six staff members who have tested positive for COVID-19 at FCI Butner-Low.  Four inmates have died, and 39 inmates and six staff members have recovered.

6. Next, as the government argued previously, U.S. Probation officers are currently unable to conduct many of their normal in-person community contacts and monitoring services.  This has not changed.  Thus, if the Court released the defendant to his mother's home, the risk remains that he would not be subject to adequate supervision during the pandemic.  Defendant's family members' promises, through counsel, that there will be no Internet connection where the defendant plans to reside offer some reassurance; however, these promises ultimately are inadequate because whether the defendant has and does not have access to the Internet must be monitored periodically by U.S. Probation.  Therefore, the defendant's release still poses a danger to the community.

WHEREFORE, the government respectfully requests that the Court deny the defendant's motion for reconsideration.

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney
N.Y. Bar Number 44440188

MARGARET J. CHRISS
Chief, Special Proceedings Division
D.C. Bar Number 452-403

_____/s/_____
PAMELA S. SATTERFIELD
Assistant United States Attorney
Special Proceedings Division
555 4th Street, N.W.
Washington, D.C. 20530
D.C. Bar Number 421-247
Pamela.satterfield@usdoj.gov
202-252-7578

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, this 1st day of June, 2020, I caused a copy of the foregoing Opposition to be served via ECF on counsel of record.

\_\_\_/s/_____
Pamela S. Satterfield
Assistant United States Attorney